FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
3:56 pm, Mar 13, 2026
JEFFREY P. COLWELL, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03726-PAB-CYC

WILLIAM MONTGOMERY,

Plaintiff,

v.

JUAN PACHECO,
MATTHEW LACKEY.

Defendants.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

---

Plaintiff William Montgomery, proceeding *pro se,* respectfully submits this Response In Opposition To Defendants Pacheco And Lackey's Motion To Dismiss under Fed. R. Civ. P. 12(b)(6) (ECF No. 17, "MTD"). The Motion should be denied in its entirety.

## ARGUMENT

### I. THE COMPLAINT PLAUSIBLY ALLEGES THAT DEFENDANTS LACKED ARGUABLE PROBABLE CAUSE TO ARREST PLAINTIFF

Defendants argue that Plaintiff's allegations "do not plausibly show that Defendants lacked probable cause" because Best Buy personnel told them Plaintiff had not paid and Plaintiff "pled the Fifth," apologized, and asked for a citation. Under controlling and persuasive authority, that is not enough to defeat the Complaint at the pleading stage.

#### a. Plaintiff's seizure was an arrest, not a mere *Terry* stop, because he was handcuffed, confined in the back of a patrol car, and held while officers prepared a citation

Before turning to probable cause, it is important to clarify the level of Fourth Amendment intrusion alleged. Under Tenth Circuit law, the combination of handcuffing, placement in a patrol car, and continued confinement while officers "figure out what we're going to do" is the **hallmark of an arrest**, not a brief investigative detention.

In *Cortez v. McCauley,* 438 F.3d 980, 993-94 (10th Cir. 2006), officers went to a home on a bare accusation of child abuse, immediately handcuffed the plaintiff, removed him from his house, and detained him in a patrol car without first interviewing key witnesses. The Tenth Circuit treated that seizure as an arrest and held that probable cause was required. Likewise, in *United States v. Melendez-Garcia,* 28 F.3d 1046, 1052-53 (10th Cir. 1994), the Court explained that "the use of firearms, handcuffs, and other forceful techniques" is sufficiently intrusive to signal that a person has been placed under arrest, absent strong, case-specific safety justifications.

Here, Plaintiff alleges that Defendants (1) ordered him to put his hands behind his back, (2) placed him in handcuffs, (3) escorted him to a marked patrol vehicle, (4) seated him in the back of that vehicle with the door closed, and (5) kept him there while they worked up a shoplifting citation and coordinated with store staff. On these facts, the degree of restraint on Plaintiff's freedom of movement was indistinguishable from the "formal arrest" situations in *Cortez* and *Melendez-Garcia,* and far beyond a minimal *Terry* stop.

The Tenth Circuit's recent decision in *Montgomery v. Cruz* underscores this point from a different angle. There, the majority resolved the appeal on the ground that Officer Cruz conceded no arrest occurred, which foreclosed any search-incident-to-arrest justification for reaching into Mr. Montgomery's pockets and searching his wallet. But the concurring judge criticized that precedent as "farcical," precisely because, in his view, the kind of restraint used in Mr. Montgomery's case already looked like an arrest and should have allowed a search incident to arrest. In other words, even a judge arguing *against* the current search-incident rule described this level of restraint as essentially arrest-like, reinforcing that handcuffs plus patrol-car confinement

are not the stuff of a mere investigative stop.

Accordingly, for purposes of Claim One, the Complaint plausibly alleges that Plaintiff was **arrested**, not merely detained under *Terry,* such that Defendants needed at least arguable **probable cause** to justify that seizure. Section II of this Response then separately explains why, even accepting that an "arrest" occurred for *seizure* purposes, the on-scene, cite-and-release nature of the encounter did **<u>not</u>** authorize the full custodial pocket-and-wallet *search* Defendants also performed.

**b. Defendants impermissibly delegated the probable-cause determination and failed to conduct any meaningful investigation**

In *BeVier v. Hucal,* the Seventh Circuit held that an officer lacked probable cause where he arrested parents for child neglect after hearing a brief accusation but "failed to avail himself of the opportunity to elicit further facts which would have indicated that the arrest should not have been made." *BeVier v. Hucal,* 806 F.2d 123, 128 (7th Cir. 1986). The Court emphasized that "a police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest," and that "it is incumbent upon law enforcement officials to make a thorough investigation and exercise reasonable judgment before invoking the awesome power of arrest and detention."

The Tenth Circuit has adopted similar reasoning in *Cortez v. McCauley,* holding that officers lacked probable cause where they arrested a suspect for alleged child abuse without interviewing readily available witnesses or examining easily accessible physical evidence. *Cortez v. McCauley,* 478 F.3d 1108, 1117–19 (10th Cir. 2007).

Here, Plaintiff alleges that the Best Buy employee and guard were merely "posted up" at the store's exit, had never observed him shop or pay for the Chromecast, and did not check registers, speak with the cashier, or review video before calling the police. Defendants then arrived and immediately arrested Plaintiff on the guard's say-so and Plaintiff's refusal to show a receipt—without asking store personnel what, if anything, they had actually observed, whether they had checked records, or whether any video existed. Only later, after arresting and searching Plaintiff

and nearly finishing a citation, did Lackey ask to see the store's video and register records, at which point he was told that Plaintiff had indeed paid and a receipt had been found.

Under *BeVier* and *Cortez,* these allegations plausibly show that Defendants "failed to avail [themselves] of the opportunity to elicit further facts which would have indicated that the arrest should not have been made." A few basic questions to the guard, employee, or cashier, or a quick review of register data or video footage—precisely what Lackey eventually did after the arrest—would have immediately clarified that Plaintiff had lawfully purchased the Chromecast. That is enough at the pleading stage to allege absence of even arguable probable cause.

**c. *Lusby* and *Baptiste* forbid blind reliance on store accusations in closely analogous shoplifting scenarios**

In *Lusby v. T.G. & Y. Stores, Inc.,* 749 F.2d 1423 (10th Cir. 1984), the Tenth Circuit affirmed § 1983 and state-law false-arrest verdicts where an off-duty officer, working as a store security guard, arrested a customer "on the spot" for shoplifting based solely on the store manager's accusation that the customer had stolen sunglasses and the suspect's inability or refusal to produce a receipt. The officer did not conduct an independent investigation before arresting the suspect at the store entrance. The Court upheld liability, making clear that officers cannot simply accept a merchant's untested accusation when easily obtainable facts could dispel suspicion.

In *Baptiste v. J.C. Penney Co.,* 147 F.3d 1252 (10th Cir. 1998), the Tenth Circuit again rejected blind reliance on store security's accusations. There, officers viewed a videotape and receipts that undermined the guards' shoplifting claims yet arrested the customer anyway. The Court held that the officers were not entitled to qualified immunity because, in light of those readily available exculpatory facts, they lacked arguable probable cause.

Plaintiff's case is materially closer to *Lusby* and *Baptiste* than to cases where the Tenth Circuit has granted qualified immunity, such as *Montgomery v. Calvano.* In *Calvano,* an officer personally observed some suspicious facts, detained Mr. Montgomery while Walmart employees

checked records, and only arrested him after a 14-minute investigation in which employees affirmatively reported that he had not paid. The Tenth Circuit stressed that the officer had actually conducted an investigation, including asking the store employees if he had paid, and then waited for the employees to conduct an investigation before ultimately arresting him.

By contrast, Plaintiff alleges that Defendants Pacheco and Lackey did *not* conduct any pre-arrest investigation ***at all*** before arresting him: they did not see Plaintiff shop or leave the register, did not ask any follow-up questions of the guard or employee before handcuffing him, and did not check any records until after arresting and searching him and nearly issuing a citation. Under *Lusby* and *Baptiste,* those allegations plausibly state a Fourth Amendment violation and defeat qualified immunity at the motion-to-dismiss stage.

**d. Plaintiff's refusal to answer questions or produce a receipt cannot supply arguable probable cause**

Defendants repeatedly emphasize that Plaintiff "pled the Fifth" when asked if he had paid and refused to show his receipt, arguing that his silence and lack of exculpatory evidence supported probable cause. That theory conflicts with controlling Supreme Court and Tenth Circuit precedent.

In *Florida v. Royer,* 460 U.S. 491, 498 (1983), the Supreme Court held that "a person's refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." Numerous other decisions likewise hold that refusing consent to a search or declining to answer questions cannot be bootstrapped into reasonable suspicion or probable cause; otherwise the right to refuse consent would be meaningless. *See Brief of the United States as Amicus Curiae Supporting Petitioner at 25, Florida v. Bostick,* No. 89-1717 ("Law enforcement officers may draw no inference justifying a search or seizure from a refusal to cooperate. That is, officers lacking legal justification to detain a person may not bootstrap noncompliance into justification for a detention, because in that event a citizen would in effect have no way of declining to participate in a 'consensual' encounter with the police."); *U.S. v.*

*Carter,* 985 F.2d 1095, 1097 (D.C. Cir. 1993) ("The constitutional right to withdraw one's consent to a search would be of little value if the very fact of choosing to exercise that right could serve as any part of the basis for finding the reasonable suspicion that makes consent unnecessary.").

The Tenth Circuit has echoed this exact principle. In *United States v. Hunnicutt,* 135 F.3d 1345 (10th Cir. 1998) for example, the Court rejected the notion that refusal to consent to a search could itself generate cause for detention, explaining that "[a]ny other rule would make a mockery of the reasonable suspicion and probable cause requirements, as well as the consent doctrine. These legal principles would be considerably less effective if citizens' insistence that searches and seizures be conducted in conformity with constitutional norms could create the suspicion or cause that renders their consent unnecessary."). This Court has recognized similar reasoning in Mr. Montgomery's prior cases. *See Montgomery v. Lore,* No. 23-1106 (10th Cir. Dec. 13, 2023), where the Tenth Circuit explicitly held when discussing Mr. Montgomery's refusal to provide a receipt, "a person's 'refusal to . . . answer does not, without more, furnish' reasonable, objective grounds for a detention."

Here, the Complaint alleges that Plaintiff had already paid for the Chromecast and that the only things Defendants knew at the moment of arrest were: (1) store personnel—who had never observed the purchase or checked records—said Plaintiff had not paid; and (2) Plaintiff exercised his right to remain silent and not produce a receipt on demand. Under *Royer, Hunnicutt,* and related authority, Plaintiff's insistence on constitutional protections could not transform an uncorroborated accusation by exit-posted-only personnel into probable cause to arrest.

**e. The *Cruz* "readily available evidence / duty to inform" reasoning does not bar Plaintiff's claim and, in any event, is distinguishable here**

In *Montgomery v. Cruz* (District Court), Chief Judge Brimmer addressed Plaintiff's *Lusby* argument and concluded that *Lusby* did not clearly establish that *Cruz* lacked probable cause to arrest partly because, in that case, "plaintiff has not alleged that there was any easily accessible evidence available to the officers to determine that plaintiff purchased the merchandise," and that

there was "no allegation that plaintiff made a statement to defendants to call defendants' attention to the existence of such evidence." Defendants may try to import that reasoning here. But:

• *Lusby* and *Baptiste* place the duty of reasonable investigation **squarely on officers,** not on the suspect.

• The present Complaint *does* allege that register and video evidence was readily available, and that Defendants actually accessed it—quickly—once they chose to look, confirming both its existence (independent of any actions by Plaintiff to "call their attention to it") and its ease of access (by off-duty, paid-by-the-store-itself police officers that admitted to already being familiar with it).

In *Baptiste v. J.C. Penney Co.,* the Tenth Circuit held that when officers know a videotape exists which captures the very conduct alleged to be criminal, they may not ignore it and simply rely on store security's characterization of what it shows. The Court explained that "officers may not rely solely on a security guard's allegations when the officers have before them an exact replication of all the information on which the guard's allegations are based," and, critically for this case, went on to state, "Absent exceptional circumstances, however, when a videotape of the conduct at issue is both known and readily accessible to an officer investigating an alleged crime, the officer must view the videotape so as to avoid improperly delegating the officer's duty to determine probable cause." *Cf. Clipper v. Takoma Park, Md.,* 876 F.2d 17, 19–20 (4th Cir. 1989).

Here, that is exactly what Plaintiff has pled: Defendants knew Best Buy maintained surveillance video "always," admitted that they relied on it as part of their off-duty loss-prevention work, and acknowledged that the footage relevant to Plaintiff was readily available—yet Lackey expressly refused to view it before deciding to "cut a ticket," instead delegating the probable cause determination to store staff. The Complaint captures the key exchange (¶ 20):

WILLIAM: *"So what did the store say? They have video footage or something?"*

LACKEY: ***"Oh yeah."***

WILLIAM: *"They told you that?"*

LACKEY: *"Yes.* ***They always have video footage.*** *That's why they hired us, also, to walk around the store."*

WILLIAM: *"So you didn't look at the video footage for yourself?"*

LACKEY: *"**Don't need to.** The store has already stopped you, asked you for a receipt, you refused, they got their merchandise back, they're gonna give us evalu, cuttin' you a ticket."*

WILLIAM: *"I understand."*

Therefore, even on *Cruz's* narrower reading, the combination of (1) readily available internal data, (2) Defendants' own acknowledgment that such video is "always" available and forms part of their loss-prevention role, and (3) Lackey's express refusal to view that readily accessible footage in favor of delegating probable cause to store personnel, satisfies—and in fact goes beyond—any "readily available evidence" requirement. Under *Baptiste* and *Clipper,* officers in these circumstances were required to review the video themselves rather than rely blindly on store accusations.

**f. Plaintiff's apology and inquiry about a citation are, at most, ambiguous and occurred *after* the arrest; probable cause is assessed at inception**

Defendants also rely on Plaintiff's alleged apology and question, "If I cooperate, will you guys go easy on me?" to argue that he effectively admitted guilt and thereby supplied probable cause. But the Complaint makes clear—and Defendants' own chronology confirms—that these remarks occurred *after* Plaintiff was already handcuffed and placed under arrest.

Probable cause must exist at the moment the arrest is initiated; post-arrest statements cannot retroactively justify an earlier seizure. *See Devenpeck v. Alford,* 543 U.S. 146, 152 (2004) (probable cause is assessed based on facts "known to the officer *at the time of* the arrest"). Moreover, an apology or request for leniency is inherently ambiguous, particularly for a *pro se* litigant dealing with an unexpected arrest, and cannot be treated as a clear confession on a motion to dismiss.

At best for Defendants, the alleged apology adds little to the uncorroborated accusation and

Plaintiff's refusal to answer questions. Taken together and viewed in Plaintiff's favor, those facts do not defeat his plausible allegation that Defendants arrested him without probable cause.

## II. THE COMPLAINT PLAUSIBLY ALLEGES THAT AN UNLAWFUL SEARCH OF PLAINTIFF'S PERSON, POCKETS, AND WALLET TOOK PLACE

*Even if* the Court were to conclude that Defendants had arguable probable cause to arrest, the Complaint independently states valid claims that a search of Plaintiff's pockets and wallet violated the Fourth Amendment because they were conducted absent a custodial arrest that would trigger the search-incident exception and extended beyond the permissible scope of a *Terry*-type frisk.

### a. Plaintiff's detention was strictly an on-scene, cite-and-release arrest analogous to the "technical" arrest in *Gonzalez* and the citation-only stop in *Knowles*

Defendants insist that because Plaintiff alleges that he was "arrested" by being handcuffed and placed in a patrol car, any search of his person and wallet automatically qualifies as a permissible "search incident to arrest." However, that conflates two distinct questions:

1. When does a seizure rise to the level of an "arrest" such that ***probable cause*** is required?
2. When does an arrest justify a ***full custodial search*** of the arrestee's person and effects as a "search incident to arrest"?

The Tenth Circuit itself has recognized that for **search-scope** purposes, not every "arrest" or citation amounts to a "custodial arrest" that authorizes a "full search" incident thereto.

In *United States v. Gonzalez*, New Mexico statutes labeled a traffic citation as an "arrest" and placed the driver "in custody" until he signed the citation. The Tenth Circuit explained that:

- "Thus, in a technical sense, **defendant here was arrested**."
- "Despite the statute's use of the words 'arrest' and 'custody,' when a New Mexico police officer stops a car merely to issue a traffic summons . . . for Fourth Amendment purposes that stop is more in the nature of an investigative detention than a traditional arrest."

The *Gonzalez* Court specifically held: "The distinction matters here because the label used for constitutional purposes defines the scope of reasonable police conduct incident to such a

stop. If such a traffic stop were like a traditional custodial arrest, then as part of the search incident to arrest the apprehending officer could search the entire passenger compartment. But if, as we conclude here, the traffic stop only amounts to an investigative detention, the officer's freedom to search is more limited."

Likewise, in *Knowles v. Iowa*, the Supreme Court held that even where an officer has probable cause to make a custodial arrest, if he instead issues a **citation** and does not actually take the suspect into custody (i.e. transport and book him), he may not conduct a full search of the vehicle (or driver) "incident to arrest." The *Knowles* Court emphasized that:

- The historical rationales for search-incident-to-arrest—the need to disarm the suspect "in order to take him into custody" and to "preserve evidence for later use at trial"—are greatly diminished where the suspect will not be taken into custody; and
- There is no basis to create a new "search incident to citation" doctrine merely because the officer **could have** made a custodial arrest.

Here, Plaintiff alleges that Defendants explicitly told him he would be cited and released on-scene and in fact never transported or booked him. Under *Gonzalez* and *Knowles*, those allegations, taken as true, describe an on-scene "technical" arrest or citation situation that is, **<u>for search-scope purposes only</u>**, functionally equivalent to an investigative detention: officers cannot bootstrap a full custodial inventory search out of an encounter where they have chosen **not** to subject the suspect to the "extended exposure" and transport characteristic of a true custodial arrest.

Defendants' reliance on this Court's earlier comment in *Montgomery v. Gosselin* that federal law recognizes only three "levels" of detentions: consensual encounters, investigative detentions, and arrests, does not change that analysis. *Gonzalez* itself recognized that a seizure can be an "arrest" in the technical or statutory sense (and thus ultimately requiring <u>probable cause</u> to justify the seizure with, as Plaintiff explains in Claim One of his Complaint) yet still be treated as an "investigative detention" <u>for strict purposes of limiting Fourth Amendment search-incident-to-arrest authority</u>

(the focus of Claims Two and Three of his Complaint). Plaintiff's theory, and his non-mutually-exclusive parsed claims, are fully consistent with that framework.

### b. ***Cohn's*** **focus on the "arrest" label misses the search-incident question and reads *Robinson* at too high a level of generality**

Defendants and the Court may try to rely on *Montgomery v. Cohn*, No. 23-1101, where the Tenth Circuit stated that it "need not decide whether Mr. Montgomery was under arrest because it was not clearly established that a reasonable police officer would have understood that Mr. Montgomery *was not under arrest* when he was placed in handcuffs." But *Cohn* reduced its logic on the clearly-established question of search-incident authority down to merely how a **seizure** is classified (detention vs. arrest) in the handcuffing-only context—it did not address the actual dispositive question of search-incident authority: whether a reasonable officer can conduct a **full custodial inventory search** of a suspect's pockets and wallet in an on-scene, citation-and-release scenario <u>that the officer knows explicitly lacks the "two historical rationales" tied to "extended exposure" that search-incident authority mandates: officer safety and evidence preservation</u>.

Under *Robinson* and *Knowles*, the key inquiry on the search-incident side is not simply, "Was there probable cause to arrest?" or "Would some officers reasonably think this was an arrest?" It is whether the officer has actually effected a **lawful custodial arrest** of the type that implicates the two historical rationales for search incident to arrest: (1) the need to disarm the suspect "in order to take him into custody" and (2) the need to preserve evidence "for later use at trial." In *Robinson*, the Court expressly described its arrest as a "full-custody arrest" in which the officer "tak[es] the suspect into custody and transport[s] him to the police station," and held that **in that custodial setting** "a full search of the person" is reasonable.

Critically, *Knowles* makes clear that those rationales are strictly tied to the **"extended exposure"** that follows taking a suspect into custody and transporting him to the police station, "rather than in the case of the relatively fleeting contact resulting from the typical traffic stop."

Thus, when an officer elects to only issue a citation and release the suspect on scene, ***even if the officer uses handcuffs and places the suspect into the back of a patrol car,*** those two "historical rationales" do not exist, and no amount of "but we used handcuffs and placed him into the back of a patrol car" reasoning can manufacture the search-incident authority.

Here, Plaintiff alleges that although Defendants handcuffed him and placed him in the back of a patrol car, they simultaneously and repeatedly promised **on-scene release with a citation**, never transported or booked him, and in fact released him once they finally checked store records and video. Objectively, that is the opposite of the "full-custody arrest" in *Robinson* and squarely within the citation-and-release scenario in *Knowles* and the "technical arrest" scenario in *Gonzalez*. Under those cases, any reasonable officer would understand that, whatever label one uses for the seizure, and whatever one's use of on-scene handcuffs and patrol car placement, a full custodial search of Plaintiff's pockets and wallet is not justified **due to the explicit absence of the two critical "extended exposure" historical rationales of officer safety and evidence preservation.**

To the extent *Cohn* quoted *Robinson* for the broad proposition that "the fact of a lawful arrest . . . establishes the authority to search," that quotation must be read in **context:** *Robinson* was describing a **lawful custodial arrest** <u>involving transport to the station and attendant extended exposure</u>, not a brief, on-scene detention with a promised citation and release. Therefore, simply being handcuffed and placed in a patrol vehicle—particularly where officers are simultaneously promising not to transport or book the suspect—is not the kind of "fact of the lawful arrest" that *Robinson* spoke of. *Robinson*'s "fact" of arrest was **<u>strictly tied</u>** to the custodial "transport and book" setting that *Knowles* specifically characterized as involving greater dangers and evidence-destruction risks than a typical *Terry*-type stop. *See Knowles at 117* ("In *Robinson,* we stated that a custodial arrest involves 'danger to an officer' because of 'the extended exposure which follows the taking of a suspect into custody and transporting him to the police station.' We recognized that '[t]he danger to the police officer flows from the fact of the arrest, and its attendant proximity,

stress, and uncertainty, and not from the grounds for arrest.").

Put differently, *Cohn*'s claim that it was not clearly established that Mr. Montgomery *"was not under arrest"* when handcuffed does not resolve the distinct question of whether reasonable officers in Defendants' shoes could believe they had authority to perform a **full custodial inventory** of his pockets and wallet despite repeatedly promising on-scene release and never taking him into custody—i.e. transporting and booking him—sufficient to actually invoke the "two historical rationales" tied to "extended exposure" that search-incident authority mandates: officer safety and evidence preservation. Under *Gonzalez*, *Knowles*, and *Robinson* read together, that question must be answered **"no"** on the facts pled here.

Accordingly, *Cohn* does not foreclose Plaintiff's search-incident-to-arrest claim, and neither Defendants nor the Court can rely on the mere presence of handcuffs and patrol-car placement to justify a full pocket-and-wallet search in what was, by Defendants' own promises and actions, a truly non-custodial, cite-and-release encounter.

**c. *Montgomery v. Cruz* confirms that search-incident-to-arrest requires an actual custodial arrest, and that officers cannot justify pocket and wallet searches where no such arrest occurs**

In *Montgomery v. Cruz,* decided January 6, 2026, the Tenth Circuit addressed a strikingly similar situation: Mr. Montgomery was detained at a Walmart for suspected shoplifting, was handcuffed and placed in a patrol car, and an officer reached into his pockets and also searched his wallet to obtain identification. The officer argued there was probable cause to arrest and that the search could be upheld as incident to a hypothetical arrest even though he conceded that no actual arrest occurred. The Court rejected that theory, holding that the search-incident doctrine requires an actual custodial arrest, not merely probable cause plus handcuffing and detention.

*Cruz* thus confirms what *Knowles* and *Robinson* already made clear: officers cannot invoke "search incident to arrest" where they have chosen not to effect a custodial arrest and instead

pursue an on-scene citation-and-release. That holding applies with even greater force here, where Defendants explicitly promised Plaintiff a citation and release, never transported or booked him, and nonetheless used the search-incident "arrest" label to justify an intrusive search of his pockets and wallet for items that were not weapons, contraband, or evidence of the specific alleged offense.

**d. The search exceeded the scope of any permissible *Terry* frisk**

Because Plaintiff's detention is appropriately characterized as an "investigative detention" **for search-scope purposes only** (see Section II(a) above), Defendants' search as alleged in the Complaint went well beyond the limited pat-down for weapons allowed under *Terry v. Ohio,* 392 U.S. 1 (1968). A *Terry* frisk must be strictly limited to determining whether the suspect is armed and dangerous; officers may not reach into pockets and remove items unless the incriminating or dangerous character of the item is immediately apparent from its feel (the "plain feel" doctrine).

Plaintiff alleges that his pants pockets contained a box of headphones, a box of non-prescription Omeprazole, and a wallet—items that "would not have reasonably felt like weapons to a trained officer," yet Defendants removed them anyway, and Lackey then rifled through Plaintiff's wallet to extract his ID. Those allegations raise a plausible inference that Defendants went beyond a protective frisk for weapons and instead conducted an evidentiary search for additional merchandise or other contraband, in violation of *Terry, Sibron,* and *Dickerson.*

The Tenth Circuit's reasoning in *Cruz*—which noted that Officer Cruz reached into Mr. Montgomery's pocket without first conducting a meaningful pat-down—underscores that such pocket entries and wallet searches are unlawful absent a valid search-incident or other exception.

**e. Searching for "additional stolen merchandise" or to locate exculpatory evidence is not a valid justification**

In their similar state-court filings, Defendants attempt to justify their search on the theory that they were entitled to look for "additional stolen merchandise" or for "instrumentalities" of shoplifting, such as scissors or blades, in Plaintiff's pockets. But neither the Complaint nor any

reasonable inference from the alleged facts suggests that Defendants had probable cause to believe the headphones, Omeprazole, or wallet were contraband or instrumentalities of the specific alleged crime of stealing a Chromecast.

To the contrary, *Montgomery v. Lore* squarely held that police cannot rummage through pockets for "additional" goods when the original accusation itself is in doubt because no one has seen the suspect take the items that are already in his pockets. Specifically, in *Lore,* the Tenth Circuit affirmed the denial of qualified immunity where an officer seized unrelated RV lights from Mr. Montgomery's pocket but where their incriminating character was not immediately apparent and the officer had no independent basis to believe they were stolen.

Moreover, as Plaintiff has pointed out in other litigation, searches aimed at uncovering exculpatory evidence—such as a receipt to prove innocence—are not recognized exceptions to the warrant requirement. *See State v. Scheer,* 99 Or. App. 80, 83 (Or. Ct. App. 1989) ("Searches to discover exculpatory evidence are not permissible."). Indeed, if officers wish to obtain a receipt, they can always ask the store to check its own records, as happened here and in *Cruz*; what they cannot do is use an exculpatory pretext to justify invasive on-person searches. *Knowles* itself rejected a similar argument that a "search incident to citation" was justified to uncover identity or evidence of unrelated crimes, emphasizing that an officer who lacks satisfactory identification can simply arrest the suspect and that such collateral investigative interests do not authorize a full search of the person absent a custodial arrest. *See also People v. Superior Court (Kiefer),* 3 Cal.3d 807, 807 (Cal. 1970) ("A search 'prompted by a general curiosity to ascertain what, if anything, was within the defendant's vehicle' is manifestly exploratory in nature, and violates both the letter and the spirit of the Fourth Amendment.").

## III. PLAINTIFF HAS PLAUSIBLY ALLEGED VIOLATIONS OF CLEARLY ESTABLISHED LAW

To overcome qualified immunity at the pleading stage, Plaintiff must show not only a

plausible violation of the Fourth Amendment, but also that the unlawfulness of Defendants' conduct was clearly established in November 2023. That requirement is satisfied here because a robust body of Supreme Court and Tenth Circuit precedent—much of it arising from Plaintiff's own prior cases—squarely governs Defendants' alleged conduct.

**a. Clearly established law forbids arrests without minimal investigation when exculpatory facts are readily available**

By 2023, it was clearly established that officers may not effect an arrest based solely on an uncorroborated accusation where readily available, low-cost investigative steps would clarify whether a crime actually occurred. *BeVier* and *Cortez,* discussed earlier, are primary examples.

*Lusby* and *Baptiste* apply those principles in the specific context of retail theft. Both decisions hold that officers cannot blindly accept uncorroborated store personnel accusations when objective evidence (e.g. cashiers, receipts, videotape) calls those accusations into question or, as applicable here*,* **would do so if the officers made bare minimal inquiry.**

Plaintiff's case fits comfortably within this line of authority. Best Buy's exit personnel had never observed Plaintiff's purchase, had not checked records or video, and immediately called the off-duty officers, who in turn arrested Plaintiff without asking even the most basic questions or checking the most obvious sources of exculpatory information they routinely knew was readily available to them. Only after the arrest and search did Lackey confirm via store records and video that Plaintiff had paid and that the stop was a "bad stop."

*Montgomery v. Calvano* and *Montgomery v. Cohn* do not undermine this clearly established law; if anything, they reinforce it by distinguishing Plaintiff's prior cases based on factual differences not present here. In *Calvano,* the Tenth Circuit stressed that the officer personally observed some suspicious facts probative of probable cause and conducted a 14-minute investigation before issuing a summons; in *Cohn,* the Court emphasized that the officer spoke with Walmart employees about payment and that the reliability of the those employees had

not been undermined by easily accessible exculpatory evidence. In both cases, qualified immunity turned on the absence of a case "squarely governing" the precise factual pattern.

Here, by contrast, the combination of *Lusby, Baptiste, BeVier, Cortez,* and *Lore*—together with Plaintiff's own body-cam-based allegations that Defendants did **<u>nothing</u>** to investigate before arresting him—provides the required "robust consensus" making it clear that arresting a shopper "on the spot" based solely on a non-investigated accusation and mere non-showing of a receipt is unconstitutional.

**b. Clearly established law holds that refusals to cooperate cannot create probable cause**

*Royer, Hunnicutt, Lore,* and related cases clearly establish that a person's refusal to answer questions, produce identification, or consent to a search cannot furnish reasonable suspicion or probable cause for detention or arrest. The Tenth Circuit has repeatedly treated this principle as settled law when evaluating traffic stops and street encounters, and it has been applied in the retail-theft context in Plaintiff's own prior litigation.

Defendants nevertheless treat Plaintiff's refusal to produce a receipt and his invocation of the Fifth Amendment as affirmative factors supporting probable cause. At a minimum, the Complaint plausibly alleges that Defendants relied on constitutionally protected silence to tip an otherwise thin, uninvestigated accusation into probable cause. That conduct violated clearly established law. *See also U.S. v. Sterling,* 909 F.2d 1078, 1082 (7th Cir. 1990) (holding that officers cannot use a suspect's mere refusal to consent "as the single additional event that ripens their preexisting concerns to the 'founded suspicion' that a *Terry* stop requires.").

**c. Clearly established law limits search-incident-to-arrest and forbids full pocket and wallet searches absent a custodial arrest**

*Knowles* has, since 1998, clearly established that a full search of a person may not be justified as "incident to arrest" where the officer only issues a citation and does not take the suspect into custody. The Supreme Court explicitly rejected a bright-line "search incident to

citation" rule, stating that neither officer-safety concerns nor evidence-preservation needs are sufficient in the absence of a custodial arrest.

*Gonzalez* further clarifies in the Tenth Circuit that when a stop is "technically an arrest," but still amounts only to an investigative detention or brief non-custodial encounter, an officer's search authority is limited to measures reasonably necessary to ensure safety; searches motivated by a generalized desire to find evidence or "additional contraband" exceed the permissible scope.

*Montgomery v. Cruz* now removes any doubt that officers in this circuit may not justify pocket and wallet searches on a search-incident theory where, as here, they have not actually arrested and booked the suspect. Although *Cruz* post-dates the incident in this case, it did not announce a new rule; it applied *Knowles, Terry,* and long-standing Tenth Circuit precedent to facts materially similar to those alleged here. The clearly established component comes from those earlier authorities, which had already put reasonable officers on notice that:

1. A brief handcuff-and-citation encounter with on-scene release does not amount to the kind of custodial arrest contemplated in *Robinson* and *Knowles*; and

2. Absent such a custodial arrest or independent justification (such as a genuine weapons frisk under *Terry*), officers may not remove benign items from pockets or rummage through wallets.

Defendants' argument that "the Colorado Supreme Court's notion of a 'non-custodial arrest' is inconsistent with federal law" and that there are only three types of encounters—consensual, investigative detention, and arrest—misses the point. The question for the search-incident doctrine is not how many "levels" of encounter exist in the abstract, but whether the encounter at issue involves the kind of **extended custodial exposure** that triggers the two historical rationales for a full search. *Knowles, Gonzalez,* and *Cruz* make clear that the answer is **no** when, as alleged here, officers handcuff a suspect, promise only a ticket, and then release him on scene without transport or booking him.

Thus, Plaintiff's claims are not internally inconsistent: for purposes of Claim One, the degree of restraint (handcuffs, patrol-car confinement, prolonged hold) means he was **arrested** and **probable**

**cause** was required; but for purposes of Claims Two and Three, that same encounter was a **non-custodial, cite-and-release arrest** that did not carry with it the separate, additional authority to conduct a full search incident to arrest under *Robinson* and *Knowles.* In other words, under clearly established law, an encounter can be an "arrest" for seizure-justification purposes while still falling short of the custodial arrest needed to justify the pocket-and-wallet search Plaintiff challenges here.

**e. Side-by-side comparison of *Lusby v. T.G. & Y. Stores, Inc.* to this case**

Because *Lusby* is so closely analogous, a brief side-by-side comparison is necessary to show why qualified immunity should be denied here as it was there:

| **Feature** | ***Lusby v. T.G. & Y. Stores, Inc.*** | ***Montgomery v. Pacheco & Lackey*** |
|---|---|---|
| **Officer's role** | Off-duty Lawton, OK officer working as store security guard. | Off-duty Northglenn officers working security at Best Buy, summoned to the doors. |
| **Basis for suspicion** | Store manager told off-duty officer that suspect had stolen sunglasses; no prior observation of purchase was made. | Employee / guard told officers that Plaintiff had not paid for Chromecast; no prior observation of purchase was made. |
| **Officer's investigation before arrest** | Officer blindly accepted manager's accusation; did not question cashier or review register records prior to arresting suspect "on the spot." | Officers blindly accepted guard's accusation; did not question cashier, check registers records, or view video before arresting Plaintiff "on the spot." |
| **Suspect's response** | Suspect did not produce receipt when requested, prior to being arrested. | Plaintiff invoked the Fifth and did not produce receipt, prior to being arrested. |
| **Post-arrest developments** | Evidence later undermined shoplifting claim; plaintiffs prevailed on § 1983 false-arrest claims. | Store later found receipt and video showing Plaintiff paid; Officers called it a "bad stop" and released Plaintiff. |

| | | |
|---|---|---|
| **Appellate holding** | Tenth Circuit upheld liability and denied qualified immunity; officers not allowed to blindly rely on uncorroborated store accusations absent minimal investigation. | Here, same Tenth Circuit precedent, combined with *Baptiste, BeVier, Cortez, Lore, Knowles, Robinson,* and *Cruz,* clearly prohibited Defendants' conduct; qualified immunity should likewise be denied. |

The parallels are so strong that *Lusby* alone would be sufficient to put reasonable officers in Defendants' position on notice that an "on the spot" arrest based solely on an uncorroborated accusation and mere not showing a receipt violates the Fourth Amendment.

## CONCLUSION

Accepting the allegations in the Complaint as true and construing them in the light most favorable to Plaintiff—as Rule 12(b)(6) requires—Plaintiff has plausibly alleged that Defendants Pacheco and Lackey: (1) arrested him for shoplifting without probable cause or even arguable probable cause; (2) conducted an unlawful search of his person, pockets, and wallet not justified by any recognized exception to the warrant requirement; and (3) did so in violation of clearly established law under *BeVier, Cortez, Lusby, Baptiste, Knowles, Robinson, Gonzalez, Lore,* and related precedent.

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that the Court **DENY** Defendants' Motion To Dismiss in its entirety.

Respectfully submitted on this, the 13th day of March, 2026.

*s/ William Montgomery*
**William Montgomery**

## CERTIFICATE OF SERVICE

I hereby certify, that on this, the 13th day of March, 2026, the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** was filed with the Court, and a true and correct copy of it was electronically sent to the following people:

**Jonathan N. Eddy**
**Eric. M. Ziporin**
SGR, LLC
3900 E Mexico Ave, Suite 700
Denver, CO 80210
T: (303) 320-0509
F: (303) 320-0210
*jeddy@sgrllc.com*
*eziporin@sgrllc.com*

***Attorneys for Defendants***

*s/ William Montgomery*
**William Montgomery**