IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03726-PAB-CYC

WILLIAM MONTGOMERY,

     Plaintiff,

v.

JUAN PACHECO, and
MATTHEW LACKEY,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Cyrus Y. Chung, United States Magistrate Judge.**

Defendants Juan Pacheco and Matthew Lackey, Northglenn police officers, move to dismiss plaintiff William Montgomery's claims against them, asserting that he fails to state a plausible claim for relief and that they are entitled to qualified immunity. ECF No. 17. Because the defendants are entitled to qualified immunity, the Court recommends that the motion be granted and the plaintiff's claims be dismissed with prejudice.

### BACKGROUND

According to the complaint, whose factual allegations the Court accepts as true for this motion, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), on November 24, 2023, the plaintiff went to a Best Buy store and purchased a Google Chromecast 4K. ECF No. 1 ¶¶ 10–11. The store automatically emailed a receipt to him and did not offer him a plastic bag. *Id*. ¶ 11. About ten minutes later, the plaintiff tried to leave the store holding the Chromecast in his hand. *Id*. ¶ 12.

A store employee near the door where the plaintiff attempted to exit approached him and asked to see his receipt. *Id*. The plaintiff replied, "I plead the fifth." *Id*. The employee stepped in front of the plaintiff and blocked the plaintiff when he tried to walk around the employee. *Id*. A security guard joined the fray, also stepping in front of the plaintiff and asking to see his receipt. *Id*. ¶ 13. The plaintiff provided no response. *Id*. Instead, he turned to proceed toward another door marked "entrance." *Id*. ¶ 14. The guard stepped in front of the plaintiff again and blocked the plaintiff's attempts to get around him. *Id*. The plaintiff placed the Chromecast in his jacket pocket, *id*., and the guard radioed to a store employee that there was "an individual attempted theft," requesting that the other employee, who was standing nearby, "get them over here." *Id*. ¶ 16. That employee, in turn, used his "radio to call the store's off-duty Northglenn Police Officer over for assistance." *Id*.

That brought the defendants. When they arrived on scene, the security guard told Pacheco, "He has a product right here that he has not paid for," and told the plaintiff, "Sir, you can't leave with that," while pointing at the plaintiff's jacket pocket containing the Chromecast. *Id*. ¶ 18. Pacheco asked the plaintiff if he had a receipt, but before the plaintiff could answer, Lackey engaged the plaintiff in conversation, *id.*, ultimately asking: "You got product that you didn't pay for?" *Id*. ¶ 19. The plaintiff responded: "I plead the fifth." *Id*. Lackey then told the plaintiff to place his hands behind his back and interlock his fingers. *Id*. The defendants handcuffed the plaintiff. *Id*. ¶ 20. The following interaction ensued:

| | |
|---|---|
| WILLIAM | "Ouch, ouch, don't break my fucking arms!" |
| LACKEY | "Alright." |
| PACHECO | "Relax." |
| WILLIAM | "Seriously." |
| PACHECO | "We're not doing anything. We're just holding you." |
| LACKEY | "What's your name?" |
| WILLIAM | "William Montgomery. Wait, I'm sorry." |
| PACHECO | "It's too late for sorries." |

| | |
|---|---|
| WILLIAM | "If I cooperate, will you guys go easy on me?" |
| LACKEY | "It's already too late for that. We're gonna go out to my car. I'll get it for ya. I'll get this right here actually. Here you go." [Lackey says these last few sentences while removing the Chromecast from Plaintiff's left jacket pocket and handing it to a nearby employee]. |
| LACKEY | "Anything else that doesn't belong to you?" |
| PACHECO | "This?" [Pacheco says this right before removing a box from Plaintiff's right pant pocket that contained a product not even sold at Best Buy stores]. |
| WILLIAM | "Look, if I cooperate . . ." |
| LACKEY | "There is no if." |
| WILLIAM | ". . . will you guys cut me a citation? No, I mean, like . . ." |
| LACKEY | "Kay, we're gonna figure it out." |
| WILLIAM | "Citation, man?" |
| LACKEY | "Yeah, look at it this way . . ." |
| LACKEY | "We'll get a vet, we'll come back for an evalu, we'll cut him [a citation]. [Turning to Guard] You guys got store trespass? You guys do store trespass?" |
| GUARD | [Turning to a nearby store employee] "You guys do store trespass here?" |
| EMPLOYEE | "Yeah." |
| LACKEY | "Okay." |
| LACKEY | "Nora 586." |
| DISPATCH | "Nora 586." |
| LACKEY | "We're gonna have one detained, can you give us a CR for shoplift?" |
| WILLIAM | "What's your name?" |
| LACKEY | "It's Officer Lackey. Do you have any ID on you?" |
| WILLIAM | "Sorry, what?" |
| LACKEY | "Do you have ID on you?" |
| WILLIAM | "Yeah. Do I have to show it to you?" |
| LACKEY | "You do." |
| WILLIAM | "Okay." |
| LACKEY | "Do you have any needles, weapons, drugs?" |
| WILLIAM | "No, no, no." |
| LACKEY | "Kay. Some other things we missed?" |
| WILLIAM | "I mean, that's, that's a non-prescription drug right there." |
| LACKEY | "Okay. Where'd you get this?" [Lackey says this while removing a box of non-prescription Omeprazole from Plaintiff's left pant pocket]. |
| WILLIAM | "King Soopers." |
| LACKEY | "Did you buy it?" |
| WILLIAM | "I got a, I got a medical condition." |
| LACKEY | "Did you buy it?" |
| WILLIAM | "Look, dude, I plead the fifth." |

3

LACKEY        "Okay, so I'm gonna seize it. I'm gonna book it into, as safe keeping. I'm gonna notify King Soopers. And if you get a receipt, you can come get it."

- - -

LACKEY        "You're gonna sit in the back of my patrol car while I work on a ticket."

LACKEY        "You're going to get a ticket, and then you can get outta here."

- - -

LACKEY        [The Officer proceeds to rifle through Plaintiff's wallet that he had removed from his rear pant pocket earlier, in order to seize his ID].

- - -

WILLIAM       "So what did the store say? They have video footage or something?"

LACKEY        "Oh yeah."

WILLIAM       "They told you that?"

LACKEY        "Yes. They always have video footage. That's why they hired us, also, to walk around the store."

WILLIAM       "So you didn't look at the video footage for yourself?"

LACKEY        "Don't need to. The store has already stopped you, asked you for a receipt, you refused, they got their merchandise back, they're gonna give us evalu, cuttin' you a ticket."

WILLIAM       "I understand."

- - -

LACKEY        "Why would you just want a ticket if you didn't do anything wrong?"

WILLIAM       "Well, I said I didn't want to go to jail."

LACKEY        "Who said you're going to jail!?"

*Id*. Lackey then completed a citation and went back into the store to speak with the security

guard and store employee. *Id*. ¶ 21. The following interaction then ensued:

LACKEY        "You guys have your video?"

GUARD         "Yeah, Officer, this is [unintelligible] strange, is they apparently looked, and he actually paid for this."

LACKEY        "Okay."

GUARD         "So, I don't know whatcha wanna do. It's a brand new situation."

LACKEY        "How many stuff did he bring, or did he conceal?"

GUARD         "So these two things are the only things I know of."

LACKEY        "Did you, do you have any of this on video?"

GUARD         [While turning to a nearby employee and showing her Plaintiff's box of headphones not even sold by that entire store chain] "So, also, really quick, you're saying this does not belong to you?"

EMPLOYEE      "No, it doesn't."

LACKEY        "Okay. And he bought this?" [While pointing to the Chromecast].

EMPLOYEE      "Well, we found a receipt for it."

LACKEY        "Where at?"

| EMPLOYEE | ". . . [unintelligible] . . ." |
| LACKEY | "In where?" |
| EMPLOYEE | "Home theater." |
| LACKEY | "Okay." |
| ANONYMOUS | "What are you trying to grab?" |
| LACKEY | "So, but he still failed to present a receipt." |
| GUARD | "Yes." |
| LACKEY | "Okay." |
| EMPLOYEE | ". . . [unintelligible] . . ." |
| LACKEY | "Okay. So what do you guys wanna do? 'Cause obviously I can't cut him a summons for it if he bought it. And, you don't know about—this doesn't belong to you, so." |
| EMPLOYEE | ". . . [unintelligible] . . ." |
| LACKEY | "Do you have, can you guys reprint the receipt for the Google Chromecast?" |
| EMPLOYEE | ". . . [unintelligible] . . ." |
| LACKEY | "Okay. So ultimately, like this falls on you guys and probably your store management, as a 'bad stop.' I dunno your guys' policies, but I'm ultimately going to release him, but he's probably gonna wanna talk to somebody's boss, so." |
| EMPLOYEE | "Well, my boss [John Doe] is the one who asked him to produce his receipt." |
| LACKEY | "Yeah? Yeah, I, I get it. So, umm, if you guys have it, I'm gonna go get him outta cuffs and we'll give him his stuff back." |
| EMPLOYEE | "Yeah, no worries." |
| LACKEY | "Okay." |

*Id.* Lackey then returned to his patrol car and removed the handcuffs and gave the plaintiff his personal belongings. *Id.* ¶ 22. The plaintiff requested and received the defendants' business cards, ending the encounter. *Id.*

The plaintiff filed this lawsuit on November 19, 2025, bringing three claims against the defendants in their individual capacities. *Id.* ¶¶ 5, 27–44. He alleges that his arrest violated the Fourth Amendment, *id.* ¶¶ 27–32, that the defendants' search of his pockets and wallet violated the Fourth Amendment, *id.* ¶¶ 33–40, and that Lackey's search of his wallet and seizure of his identification violated the Fourth Amendment. *Id.* ¶¶ 41–44.

This motion followed, and the district judge referred it to the undersigned. ECF No. 18.

5

## <u>ANALYSIS</u>

The defendants move to dismiss the plaintiff's claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The standard for evaluating those arguments is oft-repeated and well-known. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). Legal conclusions are not entitled to the assumption of truth, *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The ultimate duty of a reviewing court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

The defendants add a layer to their motion to dismiss, asserting that qualified immunity applies here. ECF No. 17 at 2–8. Under that doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To

overcome the defense, "the onus is on the plaintiff to demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Surat v. Klamser*, 52 F.4th 1261, 1270–71 (10th Cir. 2022) (quotation marks omitted).

To pass scrutiny under the first prong on a Rule 12(b)(6) motion "the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated [his] constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins*, 519 F.3d at 1249). "To qualify as clearly established, a constitutional right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Montgomery v. Cohn*, No. 23-1101, 2024 WL 1739290, at *2 (10th Cir. Apr. 23, 2024) (quotation marks omitted). A court scrutinizes the defendants' alleged conduct "for objective legal reasonableness." *Id*. (quoting *Doe v. Woodard*, 912 F.3d 1278, 1288 (10th Cir. 2019)). Courts find a right clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Id*. at *3 (quoting *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)). "In the Fourth Amendment context, the result depends very much on the facts of each case, and the precedents must squarely govern the present case." *Id*. (quoting *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016)). "This high bar ensures qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (quoting *Redmond*, 882 F.3d at 935).

Courts may address the prongs in any order, *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010), and a failure "to establish either prong of the two-pronged qualified-immunity standard" means "the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–

35 (10th Cir. 2016).

When, as here, the plaintiff proceeds pro se, a court must construe his complaint

"liberally" and hold him "to a less stringent standard than formal pleadings drafted by lawyers."

*Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v.*

*Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). But a court "will not supply additional factual

allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf."

*Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at

1110). As such, if a court "can reasonably read the pleadings to state a valid claim on which the

plaintiff could prevail," it will do so "despite the plaintiff's failure to cite proper legal authority,

his confusion of various legal theories, his poor syntax and sentence construction, or his

unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir.

2013) (quoting *Hall*, 935 F.2d at 1110). But it is not "the proper function of the district court to

assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935

F.2d at 1110).

I.    Arrest

The plaintiff's first claim alleges that the defendants arrested him in violation of the

Fourth Amendment. ECF No. 1 ¶¶ 27–32. That amendment provides that "[t]he right of the

people to be secure in their persons, houses, papers, and effects, against unreasonable searches

and seizures, shall not be violated." U.S. Const. amend. IV. But some seizures are reasonable and

therefore do not violate the Fourth Amendment. For example, "[a] police officer may arrest a

person without a warrant if he has probable cause to believe that person committed a crime."

*Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). "Probable cause exists if facts and

circumstances within the arresting officer's knowledge and of which he or she has reasonably

8

trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id*. (quotation marks omitted).

Where the officer invokes qualified immunity, the "analysis turns on 'whether extant clearly established law [at the time of the events at issue] would have placed a reasonable, similarly situated police officer on notice that *no* probable cause existed for the warrantless arrest[ ]." *Cohn*, 2024 WL 1739290, at *3 (quoting *Quinn v. Young*, 780 F.3d 998, 1007 (10th Cir. 2015)). Thus, "the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Romero*, 45 F.3d at 1476 (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). As a result, even if the defendants "reasonably but mistakenly conclude[d] that probable cause [was] present," they would be entitled to immunity. *Hunter*, 502 U.S. at 227 (quotation marks omitted).

> *Montgomery v. Cohn* is instructive. There, the Tenth Circuit found

> there was arguable probable cause based on the following allegations in the complaint, including (1) dispatch was told that Walmart had detained a suspect for shoplifting; (2) Sergeant Cohn began an investigation as soon as he arrived on the scene; (3) during the investigation, Sergeant Cohn asked a Walmart employee whether Mr. Montgomery had a receipt and he was told that he did not; and (4) Mr. Montgomery refused to produce a receipt despite multiple requests to do so.

2024 WL 1739290, at *3. In this case, the plaintiff alleges that the security guard who blocked his exit conveyed via radio that the plaintiff had attempted a theft[1], asked for police assistance, and told the police upon arrival that the plaintiff had the fruits of his attempted theft with him.

---

[1] Pursuant to Colo. Rev. Stat. § 18-4-401(1), "[a] person commits theft when he or she knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception . . . and: (a) Intends to deprive the other person permanently of the use or benefit of the thing of value; (b) Knowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit; [or] (c) Uses, conceals, or abandons the thing of value intending that such use, concealment, or abandonment will deprive the other person permanently of its use or benefit . . . ." A theft is "[a] petty offense if the value of the thing involved is less than three hundred dollars." *Id*. at (2)(b).

ECF No. 1 ¶¶ 16, 18. The defendants' requests for a receipt or an explanation went unanswered. *Id*. ¶ 19. This case therefore fits squarely within *Cohn*, meaning that the defendants had arguable probable cause entitling them to qualified immunity.

The plaintiff protests. He maintains that the defendants should have conducted a more in-depth investigation prior to handcuffing him. ECF No. 28 at 3–5; ECF No. 1 ¶¶ 28–30. But the cases on which he relies are distinguishable. This case, for instance, does not involve the arrest of a man based solely on "a statement attributed to a barely-verbal two-year old child" that "was relayed by telephone to the officers, from the nurse, who heard it from the mother who ostensibly heard it from the two-year old." *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007). Understandably, a toddler's say-so conveyed through multiple individuals did not constitute "reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime." *Id*. This case also is not one where the defendants "fail[ed] to question" the suspect, *BeVier v. Hucal*, 806 F.2d 123, 127 (7th Cir. 1986); they simply learned nothing from doing so because the plaintiff refused to answer their questions.

Nor is this case like *Lusby v. T.G. & Y. Stores, Inc*., 749 F.2d 1423 (10th Cir. 1984), or *Baptiste v. J.C. Penney Co*., 147 F.3d 1252 (10th Cir. 1998). "In each of these cases, the arresting officer arrived on the scene after the alleged crime occurred and relied solely on accusations made by a party whose reliability had been called into doubt or would have been called into doubt if the officer had done any investigation, such as by interviewing the suspect." *Cohn*, 2024 WL 1739290, at *3; *see Montgomery v. Calvano*, No. 21-1134, 2022 WL 1132212 at *2 (10th Cir. Apr. 18, 2022). Thus, those cases "do not 'squarely govern the present case.'" *Cohn*, 2024 WL 1739290, at *3 (quoting *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016)).

So it is here: nothing called into doubt the guard's account, including the defendants' attempts to interview the plaintiff.

Regardless, the plaintiff says, the defendants should have done more. After all, store employees in *Calvano* undertook a fifteen-minute investigation into his suspected theft there, whereas the investigation here unfolded more quickly. ECF No. 1 ¶ 30. But there is no lower limit on the length of an officer's investigation. Instead, courts consider whether "the facts and circumstances within the arresting officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." *Calvano*, 2022 WL 1132212, at *2 (quoting *Donahue v. Wihongi*, 948 F.3d 1177, 1189 (10th Cir. 2020)). Courts assess this "'from the standpoint of an objectively reasonable police officer' under the totality of the circumstances." *Id.* (quoting *Donahue*, 948 F.3d at 1189). Applying that standard, the material facts in this case match *Calvano*: the defendants received information from store employees about the plaintiff's suspected theft and nothing controverted that information prior to the plaintiff's arrest. *See* ECF No. 1 ¶¶ 18–19. Nothing in *Calvano* suggested that the investigative time at issue there constituted a floor.

The plaintiff has an additional shot in his sling. A court, he says, cannot use his silence to find probable cause. ECF No. 28 at 5–6. After all, a person has the right to remain silent. *See* U.S. Const., amend. V. It is true that "a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." *Florida v. Bostick*, 501 U.S. 429, 437 (1991). But the lack of any evidence that the defendants had to cast doubt on the employees' accounts prior to the plaintiff's arrest, whether from the plaintiff or other sources, is what distinguishes this case from *Baptiste* or *Lusby*. That is, the plaintiff's silence does not

create probable cause; other plaintiffs' explanations in their cases dispelled what could otherwise

have been probable cause, and no such explanation is present here.

Finally, the plaintiff argues *Montgomery v. Lore*, No. 23-1106, 2023 WL 8613523 (10th

Cir. Dec. 13, 2023), requires a different conclusion. ECF No. 28 at 6. But that case involved a

*Terry* stop, *id*. at 2 (discussing *Terry v. Ohio*, 392 U.S. 1 (1968)), not an arrest. "[A] *Terry* stop,

is an encounter in which police may stop and briefly detain a person for investigative purposes."

*Plascencia v. Taylor*, 514 F. App'x 711, 714 (10th Cir. 2013) (quotation marks omitted). "An

arrest is distinguished by the involuntary, highly intrusive nature of the encounter. The use of

firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative

detention and enter the realm of an arrest." *Cortez v. McCauley*, 478 F.3d 1108, 1115–16 (10th

Cir. 2007) (quotation marks omitted); *see Terry*, 392 U.S. at 26 ("An arrest is a wholly different

kind of intrusion upon individual freedom from a limited search for weapons."). The plaintiff

was arrested because he was handcuffed, taken outside of the store, and placed into the patrol

car. ECF No. 1 ¶¶ 2, 20–21; *see Montgomery v. Cohn*, No. 22-cv-00011-PAB-MEH, 2023 WL

2366732, at *6 (D. Colo. Mar. 3, 2023) (finding "that the use of handcuffs under these

circumstances constitutes an arrest, not an investigative detention"), *aff'd*, 2024 WL 1739290.

Indeed, he concedes that the encounter had the hallmarks of an arrest. *See* ECF No. 28 at 2.

In sum, it is not clearly established that the defendants lacked arguable probable cause to

arrest the plaintiff for shoplifting. They are therefore entitled to qualified immunity on claim 1.

## II.    Search and Seizure

The plaintiff's second and third claims, which relate to the search of his person and the

seizure of his property, also invoke the Fourth Amendment. To state a claim for an unlawful

search or seizure under the Fourth Amendment, a complaint must allege facts plausibly

demonstrating that there was an unreasonable search or seizure. *See Brower v. Cnty. of Inyo*, 489

U.S. 593, 599 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The plaintiff alleges that

Lackey handcuffed him, removed the Chromecast from his pocket and that Pacheco

subsequently removed a box from the plaintiff's right pant pocket. ECF No. 1 ¶¶ 19–20. Lackey

also removed the plaintiff's wallet from his rear pant pocket. *Id*. ¶ 20.

It is true that "[i]n general, warrantless searches are per se unreasonable." *United States v.

Knapp*, 917 F.3d 1161, 1165 (10th Cir. 2019). However, when someone is lawfully arrested,

arresting officers may search "the arrestee's person, [and] the area within the arrestee's

'immediate control.'" *Id*. (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). "This

authority is justified by the need to disarm the suspect and preserve evidence." *Id*. (citing *United

States v. Robinso*n, 414 U.S. 218, 234 (1973)). As articulated above, the defendants had at least

arguable probable cause to arrest the plaintiff for shoplifting. As a result, their search of the

plaintiff's person was justified as a search incident to arrest. *See United States v. Van Dam*, 37 F.

App'x 461, 464 (10th Cir. 2002).

The plaintiff protests. He concedes that his encounter with the police bore "the

hallmark[s] of an arrest, not a brief investigative detention." ECF No. 28 at 2 (emphasis omitted).

Nevertheless, he says, because the defendants did not transport him to the police station, the

rationales for a search incident to arrest are undermined and, as such, the search in this case

cannot be justified on that basis. ECF No. 28 at 9–11; *see also id*. at 18–19.

The suggestion has little to commend it. The plaintiff has argued before "that because he

was never transported to the police station and booked," the police "could not search him."

*Cohn*, 2024 WL 1739290, at *4. The Tenth Circuit rejected that argument, holding that "it was

not clearly established that a reasonable police officer would have understood that Mr.

13

Montgomery *was not under arrest* when he was placed in handcuffs." *Id.* The same rationale applies here.

The cases the plaintiff cites do not change the calculus. This is not, for instance, a case where the plaintiff was searched but not arrested. *Montgomery v. Cruz*, 162 F.4th 1285, 1289 (10th Cir. 2026). Nor is it one where a state statute labeled traffic-stop actions as an "arrest," diverging from the Fourth Amendment's categorizations. *See United States v. Gonzalez*, 763 F.2d 1127, 1130 n.1 (10th Cir. 1985). And unlike *Knowles v. Iowa*, 525 U.S. 113, 116–19 (1998), this case does not involve a traffic stop at all. To be clearly established law, "[w]hile there does not have to be a case that is factually identical, it must still be apparent to a reasonable officer in light of pre-existing law that his conduct was unlawful." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010). Cases about traffic stops do not guide an officer about whether handcuffing an individual and placing him in a patrol car can anchor a search incident to arrest. Indeed, the very "notion of a 'non-custodial arrest'" that the plaintiff pitches here "is inconsistent with federal law, which recognizes only three levels of police-citizen interactions under the Fourth Amendment: consensual encounters, investigative detentions, and arrests." *Montgomery v. Gosselin*, No. 18-cv-02283-PAB-MEH, 2019 WL 4639950, at *3 (D. Colo. Sep. 23, 2019). It is true that *United States v. Robinson*, 414 U.S. 218, 234–35 (1973), cited an officer-safety rationale, including safety en route to the police station, to justify searches incident to arrest. But that does not establish the concept of a "non-custodial arrest." In other words, neither "*Knowles* [n]or *Robinson* . . . set[] a bright-line rule that a stop (supported by probable cause to arrest) must actually culminate in a suspect's transportation for a custodial arrest, justifying a search, to be found." *United States v. Schwabland*, No. CR14-223RSL, 2015 WL 13333855, at *5 (W.D. Wash. Apr. 29, 2015), *aff'd*, 679 F. App'x 609 (9th Cir. 2017). "Such a finding would contradict

14

post-*Robinson* statements from the Supreme Court concerning what it means to be arrested." *Id.* (citing *Illinois v. Lafayette*, 462 U.S. 640, 645 (1983)). The Court accordingly declines to make such a finding here.

The short of it is that "long-established Fourth Amendment doctrine provides that searches of persons incident to a lawful arrest are reasonable under the Fourth Amendment," *Frey v. Town of Jackson*, 41 F.4th 1223, 1243 (10th Cir. 2022), and the plaintiff points to no law clearly establishing that this case did not involve such a search. The defendants are therefore entitled to qualified immunity.

## III.     Dismissal with Prejudice

Dismissal of a case is a harsh remedy, and a pro se litigant's pleadings are to be construed liberally. As a general rule, therefore, a court may give a pro se litigant the opportunity to amend the complaint to cure a pleading defect. *Hall*, 935 F.2d at 1109–10; *Reynolds v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). However, a court may dismiss a complaint without an opportunity to amend if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile." *Curly v. Perry*, 246 F.3d 1278, 1281–82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110). Here, the Court's recommendation to dismiss the plaintiff's claims is not due to a pleading deficiency. Rather, as a matter of law, the defendants are entitled to qualified immunity for lack of clearly established law. No amendment would remedy that. Accordingly, the plaintiff's claims should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court **RECOMMENDS** that the defendants' Motion to

Dismiss, ECF No. 17, be **GRANTED** and that the Fourth Amendment claims against Pacheco

and Lackey be **DISMISSED with prejudice.**[2]

Respectfully submitted this 6th day of July, 2026, at Denver, Colorado.

BY THE COURT:

_____
Cyrus Y. Chung
United States Magistrate Judge

---

[2] Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Finally, all parties must consult and comply with the District Judge's practice standards for any specific requirements concerning the filing and briefing of objections.