IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-03726-PAB-CYC

WILLIAM MONTGOMERY,

Plaintiff,

v.

JUAN PACHECO, and
MATTHEW LACKEY,

Defendants.

---

## ORDER ACCEPTING RECOMMENDATION OF MAGISTRATE JUDGE

---

This matter comes before the Court on the Recommendation of United States Magistrate Judge [Docket No. 34]. Plaintiff William Montgomery filed an objection. Docket No. 39. Defendants filed a response. Docket No. 42. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. FACTS[1]

This case arises out of plaintiff's visit to a Best Buy store in Northglenn, Colorado on November 24, 2023. Docket No. 1 at 3, ¶ 10. As plaintiff was leaving the store with a Google Chromecast 4K device he had just purchased, a store employee asked to see his receipt, to which plaintiff replied, "I plead the fifth." *Id.* at 3-4, ¶ 12. A store security officer also asked to see his receipt, and plaintiff did not answer him. *Id.* at 4, ¶ 13.

---

[1] The well-pleaded facts below are taken from the complaint, Docket No. 1, and are presumed to be true for purposes of ruling on defendants' motion to dismiss. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

Plaintiff attempted to leave the store but the security guard blocked the exit. *Id.*, ¶ 14. Plaintiff placed the Chromecast into his jacket pocket. *Id.* The security guard radioed for assistance and stated, “I got an individual attempted theft right now.” *Id.* at 5, ¶ 16. The security guard called over to the store employee and said, “Would you get them over here, please?.” *Id.* Plaintiff watched the store employee use a radio to call the store’s off-duty police officers. *Id.*

Defendants Juan Pacheco and Matthew Lackey of the Northglenn Police Department responded to the scene. *Id*. at 5-6, ¶¶ 16-18. The security guard told Officer Pacheco, while pointing to the Chromecast protruding from plaintiff’s jacket pocket, “He has product right here that he has not paid for.” *Id.* at 5-6, ¶ 18. Officer Lackey asked plaintiff, “You got product you didn’t pay for?” *Id.* at 6, ¶ 19. Plaintiff replied, “I plead the fifth.” *Id.* Officer Lackey told plaintiff to place his hands behind his back and interlock his fingers. *Id.* Defendants then placed plaintiff in handcuffs. *Id.* at 6, ¶ 20.

While plaintiff was handcuffed, Officer Lackey removed the Chromecast from plaintiff’s jacket pocket and handed it to a nearby store employee. *Id.* Officer Lackey removed a product that was not purchased from Best Buy and a box of non-prescription Omeprazole from plaintiff’s pants pockets. *Id.* at 7-8, ¶ 20. After doing so, Officer Lackey told plaintiff he was going to sit in the back of the patrol car while Officer Lackey worked on writing a ticket. *Id.* Defendants then “rifled” through plaintiff’s wallet, which defendants had removed earlier in the encounter, to review plaintiff’s identification. *Id.*

Officer Lackey filled out a citation to give to plaintiff. *Id.* at 9, ¶ 20. A few minutes later, defendants went back into the store to speak with the security guard. *Id.*, ¶ 21.

The security guard told defendants that the store had reviewed security footage and determined that plaintiff had purchased the Chromecast. *Id.* Officer Lackey returned to his patrol vehicle, removed the handcuffs from plaintiff, and returned plaintiff's belongings. *Id.* at 11, ¶ 22.

Plaintiff brings claims alleging that (1) his arrest violated the Fourth Amendment, *id.* at 12-15; (2) defendants' search of his pockets and wallet violated the Fourth Amendment, *id.* at 15-23; and (3) Officer Lackey's search of his wallet and seizure of his identification violated the Fourth Amendment. *Id.* at 23. The recommendation finds that defendants are entitled to qualified immunity on all of plaintiff's claims and therefore recommends dismissal with prejudice. *See* Docket No. 34 at 15.

## II. LEGAL STANDARD

### A. Objections to Magistrate Judge Recommendations

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party

objects to those findings.”). The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is “no clear error on the face of the record.” Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less than a “clearly erroneous” or “contrary to law” standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b). Because plaintiff is proceeding pro se, the Court will construe his objection and pleadings liberally without serving as his advocate. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

**B. <u>Motion to Dismiss</u>**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff’s “claim to relief . . . plausible on its face.” *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). “The ‘plausibility’ standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.” *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, “[s]pecific facts are not necessary; the statement need only ‘give the defendant fair notice of what the claim is and the grounds upon which it rests.’” *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). However, a plaintiff still must provide “supporting factual averments” with his allegations. *Cory v. Allstate Insurance*, 584 F.3d 1240, 1244 (10th Cir. 2009) (“[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.” (citation

omitted)). Otherwise, the Court need not accept conclusory allegations. *Moffet v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1232 (10th Cir. 2002).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### C. <u>Qualified Immunity</u>

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard. *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)). When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

## III. ANALYSIS

### A. Claim One – Unlawful Arrest

"[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007). In the Tenth Circuit, "[a]s a practical matter, in the

context of a qualified immunity defense on an unlawful arrest claim, [courts] ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Corona v. Aguilar*, 959 F.3d. 1278, 1285 (10th Cir. 2020) (internal quotation marks, alterations, and citation omitted). "Arguable probable cause" is another way of saying that the officers' conclusions about whether probable cause existed rested on a reasonable but mistaken belief. *Cortez*, 478 F.3d at 1120–21. This same analysis applies in determining whether an officer had reasonable suspicion for a detention for purposes of qualified immunity. *See Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1207 (10th Cir. 2008) ("In the context of a § 1983 action, moreover, the officer is entitled to qualified immunity if a reasonable officer could have believed that reasonable suspicion existed to detain the plaintiff – i.e., if the officer had arguable reasonable suspicion.") (alterations, internal quotations, and citation omitted).

The recommendation finds that defendants had arguable probable cause to arrest plaintiff for shoplifting. Docket No. 34 at 12. The recommendation relies on *Montgomery v. Cohn*, 2024 WL 1739290 (10th Cir. Apr. 23, 2024). *Id.* In *Cohn*, the Tenth Circuit held:

> there was arguable probable cause based on the following allegations in the complaint, including (1) dispatch was told that Walmart had detained a suspect for shoplifting; (2) Sergeant Cohn began an investigation as soon as he arrived on the scene; (3) during the investigation, Sergeant Cohn asked a Walmart employee whether Mr. Montgomery had a receipt and he was told that he did not; and (4) Mr. Montgomery refused to produce a receipt despite multiple requests to do so.

2024 WL 1739290, at *3. The recommendation finds that the facts in this case "fit[ ] squarely within *Cohn*" and thus defendants had arguable probable cause to arrest

plaintiff. *See* Docket No. 34 at 9-10. As the recommendation notes, the complaint alleges the Best Buy security guard conveyed via his radio that plaintiff had attempted a theft, asked for police assistance, and told the police upon arrival that plaintiff had the allegedly stolen merchandise with him. *See id.* (citing Docket No. 1 at 5-6, ¶¶ 16, 18). When defendants arrived, Officer Lackey asked whether plaintiff had merchandise he did not pay for to which plaintiff responded, "I plead the fifth." Docket No. 1 at 6, ¶ 19.

The Court agrees that *Cohn* establishes that defendants had arguable probable cause to arrest plaintiff for shoplifting. As in *Cohn*, store employees told defendants that plaintiff had been suspected of shoplifting, with the security guard pointing to the Chromecast that was protruding from plaintiff's pocket. *Id.* at 5-6, ¶ 18. Defendants asked plaintiff whether he had merchandise that was stolen, to which they did not receive an answer. *Id.* at 5-6, ¶¶ 18-19. As the recommendation finds, there was no information that called into doubt the security guard's statement that plaintiff had stolen merchandise. *See* Docket No. 34 at 10-11.

Plaintiff attempts to distinguish *Cohn* on the basis that defendants "did not begin an investigation on arrival" and instead "handcuffed Montgomery immediately after he declined to answer the single question put to him." Docket No. 39 at 8. The allegations in the complaint demonstrate that defendants did not arrive on the scene and immediately handcuff plaintiffs. Rather, defendants received information from the security guard that plaintiff had walked out of the store with merchandise he did not pay for, defendants failed to get an answer from plaintiff regarding whether he had stolen

merchandise, and then proceeded to arrest plaintiff.[2] *See* Docket No. 1 at 5-6, ¶¶ 18-20. There was nothing that gave defendants reason to question the reliability of the security guard's information.

Although plaintiff fails to distinguish *Cohn*, he argues that *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998), and *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), *judgment vacated sub nom. City of Lawton, Okla. v. Lusby*, 474 U.S. 805 (1985), supply clearly established law that defendants lacked probable cause to arrest him. *See* Docket No. 39 at 9-11. The Court agrees with the recommendation and *Cohn* that these cases are distinguishable. As held in *Cohn*,

> Mr. Montgomery's reliance on *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252 (10th Cir. 1998), and *Lusby v. T.G. & Y. Stores, Inc.*, 749 F.2d 1423 (10th Cir. 1984), *vacated sub nom. City of Lawton v. Lusby*, 474 U.S. 805 (1985), *aff'd on reconsideration*, 796 F.2d 1307 (10th Cir. 1986) is misplaced. In each of these cases, the arresting officer arrived on the scene after the alleged crime occurred and relied solely on accusations made by a party whose reliability had been called into doubt or would have been called into doubt if the officer had done any investigation, such as by interviewing the suspect. *See Baptiste*, 147 F.3d at 1257 (concluding that the officers lacked reasonable grounds "to believe the shoplifting allegations made by store security guards in light of the conduct recorded on [a] videotape; [the suspect's] explanation; her production of receipts[;] ... and the search of her bag, purse, and pockets, which revealed no stolen merchandise"); *Lusby*, 749 F.2d at 1430 (noting the arresting officers arrived on the scene, "picked up the [suspects], handcuffed and frisked them

---

[2] The circumstances supporting probable cause here are stronger than those in *Cohn*. As defendants were handcuffing plaintiff, plaintiff said, "Wait, I'm sorry." *See* Docket No. 1 at 6, ¶ 20. When Officer Lackey responded, "It's too late for sorries," plaintiff said, "If I cooperate, will you guys go easy on me?" *Id*. While there is some ambiguity as to what "sorry" and "cooperate" meant, in this context a reasonable officer would interpret the statements as an indicia of culpability, namely, a suspect's request to trade information for leniency. *Cf. United States v. Talley*, 392 F. App'x 129, 134 (4th Cir. 2010) (unpublished) ("Talley had admitted to [the officer] that he could not stop looking at pornography and asked [the officer] to give him a break and let him go. In the context of [the officer's] questioning regarding the possible child pornography offense, [the officer] had reason to believe that Talley had just admitted his guilt. He therefore had probable cause to arrest him.").

> and took them to jail without interviewing witnesses or conducting any inquiry to determine whether probable cause existed to arrest them"). These cases do not "squarely govern the present case," [*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016)] (internal quotation marks omitted).

2024 WL 1739290, at *3. Here, there was nothing that called into doubt the reliability of the security guard's accusation of plaintiff. Instead, the security guard's accusation was supported by him pointing out the merchandise in question and plaintiff's refusal to produce a receipt.

Plaintiff also argues that it was clearly established that the officers had an obligation to view the store security video before they could lawfully arrest him. Docket No. 39 at 4-5, ¶ 10. In support of this argument, he relies upon *Baptiste*, 147 F.3d at 1257 n.8, which noted that, "[a]bsent exceptional circumstances, . . . when a videotape of the conduct at issue is both known and readily accessible to an officer investigating an alleged crime, the officer must view the videotape so as to avoid improperly delegating the officer's duty to determine probable cause." *Id.* Plaintiff claims that the store's security video was easily accessible and that Officer Lackey knew that the video existed, but "declined to consult it," instead delegating the investigation to the store's security personnel. *Id*. Plaintiff's reliance on *Baptiste* is unpersuasive, especially as a source of clearly established law. *See Craft v. White*, 840 F. App'x 372, 375-76 (10th Cir. 2021) (unpublished) (labeling *Baptiste's* comment that an officer "must view the videotape" as dictum); *see also Alberty v. Hunter*, 144 F.4th 408, 417 n.2 (2d Cir. 2025) (noting that Tenth Circuit in *Craft* characterized the language in *Baptiste* as dictum and stating that "we have never adopted a rule that officers must watch a video known to them before arresting a suspect. *See Walston v. City of New York*, 289 F. Supp. 3d 398, 414 (E.D.N.Y. 2018), *aff'd,* 754 F. App'x 65 (2d Cir. 2019) (unpublished) ("[C]ourts

in this Circuit have expressly held that police do not have to review surveillance video in order to establish probable cause.")").

Moreover, the Court finds that the circumstances here are distinguishable from *Baptiste*. There are no allegations in the complaint that the officers could have "readily" watched the surveillance video. Rather, the complaint alleges that, after the police officers were called over, store personnel began the process of reviewing the store security video, which, given that they had no information about when or at which cash register plaintiff purchased the Chromecast, *see* Docket No. 1 at 4-5, ¶ 15 (employees did not follow plaintiff through the store), took some time. *See id*. at 9, ¶ 21 (after completing the citation, Officer Lackey went into the store and asked employees, "You guys have your video?").

Thus, the Court finds that the complaint, viewed in a light most favorable to plaintiff, does not allege that the store security video was "readily accessible" to the officers. In fact, the allegations show that the exculpatory portion of the store security video was not "readily" accessible to even the store security personnel since it took them time to review the video and determine that plaintiff in fact paid for the Chromecast.

To the extent that plaintiff, relying on *Baptiste*, bases his objection on the officers improperly delegating their investigation to the store, *see* Docket No. 39 at 4-5, ¶ 10, the Court rejects it. Plaintiff cites no case that requires an officer, as opposed to a store employee, to be the person who searches the security video to determine whether a person suspected of shoplifting in fact failed to pay for the merchandise. Thus, it was reasonable for the officers, who knew that the video review process was taking place,

Docket No. 1 at 6-11, ¶¶ 20-21, to allow the store employees to review the video while the officers did other things. Nothing in *Baptiste* or in *Lusby* suggests otherwise.

Although plaintiff attempts to distinguish *Cohn* on the ground that the officers here did not begin their investigation immediately upon arrival, Docket No. 39 at 8-9, ¶ 22, as discussed above, the complaint alleges that officers were aware that the store was in the process of reviewing the video. Plaintiff does suggest that interviewing store employees would have exculpated him, especially given that the complaint alleges that the store employee and the security guard did not follow plaintiff around the store. Docket No. 1 at 4-5, ¶ 15. As soon as the officers arrived at plaintiff's location, the security told Officer Pacheco that "[h]e has a product right here that he has not paid for." *Id.* at 5-6, ¶ 18. Plaintiff cites no cases that would require the officers at that point to take investigatory measures other than waiting for store personnel to review the security video.

Because defendants had arguable probable cause to arrest plaintiff for shoplifting, defendants are entitled to qualified immunity on Claim One. The Court will overrule plaintiff's objection and dismiss Claim One.

### B. Claims Two and Three – Unlawful Search and Seizure

Claims Two and Three are based on defendants' search and seizure of the items in plaintiff's pockets and wallet. *See* Docket No. 1 at 15-23. The recommendation finds that "the defendants had at least arguable probable cause to arrest the plaintiff for shoplifting. As a result, their search of the plaintiff's person was justified as a search incident to arrest." Docket No. 34 at 13. The recommendation notes, *see id.* at 13-14, that the Tenth Circuit held in *Cohn* "it was not clearly established that a reasonable

police officer would have understood that Mr. Montgomery *was not under arrest* when he was placed in handcuffs." *Id*. (quoting *Cohn*, 2024 WL 1739290, at *4). The recommendation finds that *Cohn*'s rationale applies here, stating that, because plaintiff "points to no law clearly establishing that this case did not involve" a search incident to arrest, defendants are "therefore entitled to qualified immunity." *Id.* at 15.

As found regarding Claim One, plaintiff's arrest was supported by arguable probable cause. Therefore, the Court agrees that the search of plaintiff was a valid search incident to arrest. *See Cohn,* 2024 WL 1739290, at *4 (concluding that there was a valid search incident to arrest after finding that there was arguable probable cause for plaintiff's arrest); *Garcia v. Davis*, 2016 WL 9777236, at *16 (D.N.M. June 3, 2016) ("Defendants had arguable probable cause to arrest Plaintiff; therefore, the search of Plaintiff's person incident to the arrest was lawful."); *Metz v. Bridges*, 2024 WL 5088586, at *5 (11th Cir. Dec. 12, 2024) ("it was reasonable for an officer in Officer Dodson's position to believe that Metz was arrested, and that Officer Dodson could therefore conduct a search incident to arrest").

Plaintiff objects, arguing that *Knowles v. Iowa*, 525 U.S. 113 (1998), supplies clearly established law that defendants could not conduct a full-blown search incident to arrest. Docket No. 39 at 13. Specifically, plaintiff argues that defendants merely wrote him a citation and therefore did not effect a custodial arrest that would justify a full search. *See id.* at 13-14. As held in *Cohn*, "*Knowles* is inapposite because Mr. Montgomery was placed under arrest before he was searched" as there was at least arguable probable cause to support plaintiff's arrest. *See* 2024 WL 1739290, at *4. The fact that defendants, after arresting plaintiff, wrote him a citation does not make the

arrest non-custodial. As an initial matter, the seizure of the items in plaintiff's pockets occurred before Officer Lackey agreed to write a citation and while plaintiff was in handcuffs. *See* Docket No. 1 at 6-9, ¶¶ 20-21. Furthermore, the arrest was custodial because Officer Lackey planned to take plaintiff to his patrol car before he issued the citation and did in fact place plaintiff in the patrol car. *See id.* at 8, 11, ¶¶ 20, 22. Accordingly, defendants are entitled to qualified immunity on Claim 2. *See Barnes v. Carolan*, 819 F. App'x 51, 53 (2d Cir. 2020) (unpublished) ("Because the defendants had at least arguable probable cause to arrest Barnes for an open container violation, the search was also lawful. A search incident to arrest is lawful where the officer reasonably believed he had probable cause, regardless of whether the officer actually intended to arrest the suspect (or simply issue a ticket or violation) prior to the search.").

Plaintiff also argues that the later search and seizure of his wallet – which is the basis for Claim 3 and which occurred after Officer Lackey agreed to write a citation – was not a valid search incident to arrest. *See* Docket No. 39 at 19. However, plaintiff cites no clearly established law stating that an officer, who previously seized a wallet lawfully, cannot later, after deciding to write a citation, go through the wallet to obtain the suspect's identification. Instead, plaintiff attempts to distinguish this case from *United States v. Robinson*, 414 U.S. 218, 220 (1973), arguing that *Robinson* "upheld the search of a coat pocket and the opening of a cigarette package; it addresses neither a wallet, an identification document, nor the seizure of one." *See id.* *Robinson*, however, supports finding that defendants are entitled to qualified immunity on Claim Three:

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident

> to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

*Robinson*, 414 U.S. at 235. In sum, plaintiff's arrest, being based on arguable probable cause, permitted a search incident to arrest, including the search of plaintiff's pocket and wallet.

The Court will overrule plaintiff's objections, find that defendants are entitled to qualified immunity, and dismiss Claims Two and Three.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 34] is **ACCEPTED**. It is further

**ORDERED** that Plaintiff's Objection to the Magistrate Judge's Report and Recommendation [Docket No. 39] is **OVERRULED**. It is further

**ORDERED** that Defendants' Motion to Dismiss [Docket No. 17] is **GRANTED**. It is further

**ORDERED** that plaintiff's claims are **DISMISSED with prejudice**.[3] It is further

---

[3] Plaintiff does not object to the magistrate judge's recommendation that his claims be dismissed with prejudice. *See* Docket No. 34 at 15. The Court agrees that, because defendants are "entitled to qualified immunity for lack of clearly established law[,] [n]o amendment would remedy that" and dismissal with prejudice is proper. *See id.*; *see also Clark v. Wilson,* 625 F.3d 686, 692 (10th Cir. 2010) (instructing the district court to grant defendants' motion to dismiss based on qualified immunity "with

**ORDERED** that this case is closed.

DATED September 29, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

prejudice"); *McCrary v. Jones*, 2015 WL 873641, at *6 (W.D. Okla. Feb. 27, 2015) (dismissing claim with prejudice where defendant was entitled to qualified immunity).